UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ANNE J. FOWLER, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT 6:18-cv-00284 |
| ALLIANCE DATA SYSTEMS CORPORATION d/b/a TEXAS ALLIANCE DATA SYSTEMS CORPORATION and COMENITY BANK, | JURY TRIAL DEMANDED |
| Defendants. | |

## **COMPLAINT**

**NOW COMES** ANNE J. FOWLER ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, ALLIANCE DATA SYSTEMS CORPORATION d/b/a TEXAS ALLIANCE DATA SYSTEMS CORPORATION ("Alliance") and COMENITY BANK ("Comenity"), (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227, and violations of the Texas Debt Collection Act ("TDCA") pursuant to Tex. Fin. Code Ann. §392.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the TCPA and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. The Court has supplemental jurisdiction over the state law TDCA claim under 28 U.S.C. §1367.

1

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Western District of Texas, Plaintiff resides in the Western District of Texas, and all of the events or omissions giving rise to the claims occurred within the Western District of Texas.

**PARTIES**

5. Plaintiff is a consumer and natural person over 18-years-of-age who, at all times relevant, resided in Western District of Texas.

6. Plaintiff is a "person" as defined by 47 U.S.C. §153(39) of the TCPA.

7. Comenity works "with hundreds of well-known and much-loved companies to offer their customers – customers just like you – credit programs that connect loyal shoppers to the brands they love."[1]

8. Comenity is a Delaware corporation engaged in the business of offering credit services and collecting or attempting to collect, directly or indirectly, debts owed or due using the mail and telephone from consumers across the country, including consumers in the State of Texas.

9. Alliance "is the engine behind loyalty and marketing campaigns for more than 1,000 consumer-facing companies worldwide across all industries: retail, travel, pharmaceutical, financial services, auto, and more."[2]

10. Alliance further states, "We truly understand millions of individual consumers and their habits through our data analysis expertise. We understand where people like to shop, what device they like to use, the time of day they prefer to shop, what they're shopping for, and the specific message that will interest them in a purchase." [2]

---

[1] http://about.comenity.net/about (Last accessed on September 11, 2018.)
[2] https://www.alliancedata.com (Last accessed on September 11, 2018.)

11. Alliance further boasts:

> "At Alliance Data's card services business, we know 40 million consumers. How? They carry one (or more) of our clients' branded credit cards, either in their wallet or on their mobile device. We manage more than 160 branded credit programs — private label, co-brand, and commercial — for the world's most recognizable brands.
> So, what does that mean exactly? When you use your Caesars Entertainment, Pottery Barn, J. Crew, or Victoria's Secret credit card (just to name a few), that's actually us. We capture transactional data, then use it to better understand consumer behavior and strengthen the ties between our clients and their customers. We also talk directly to consumers, providing outstanding and industry-leading customer care as part of the branded credit program. This combination translates to highly effective, multi-channel marketing communications for our clients. We also create incentives that drive sales, engage cardholders, and foster long-term brand loyalty."[2]

12. Alliance is Comenity's parent-company and is a Delaware corporation engaged in the business of marketing credit services using the telephone to consumers across the country, including consumers in the State of Texas.

## FACTS SUPPORTING CAUSE OF ACTION

13. Around 2010, Plaintiff obtained a store credit card from Bealls[3]. The account for the aforementioned retailer is serviced through Comenity and Plaintiff incurred debt on this credit card ("subject debt").

14. When Plaintiff signed up for this credit card her cellular service was provided by Straight Talk Wireless, and her cellular phone number was (254) XXX-2106.

15. Around August 2017, Plaintiff switched her cellular carrier to AT&T, and changed her cellular telephone number to (254) XXX-4002.

---

[3] "This site gives access to services offered by Comenity Bank. Comenity Bank issues your Bealls Credit Card account." https://d.comenity.net/bealls/ (Last accessed on September 24, 2018.)

16. Plaintiff *never* provided her cellular phone number ending in 4002 to Defendants, and never otherwise expressly consented to their calls.[4]

17. At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of her cellular telephone number ending in 4002. Plaintiff is and has always been financially responsible for this cellular telephone and its services

18. Around May 2018, Plaintiff began to suffer financial hardship and fell behind on her payments.

19. Immediately, Comenity began placing collection calls to her cellular telephone attempting to collect the subject debt.

20. All of Comenity's collection calls have been to Plaintiff's new cellular phone number ending in 4002.

21. Around the middle of May 2018, Plaintiff called Comenity in order to make a payment on the subject debt. During this call, Plaintiff requested that the calls cease. Comenity's representative responded by telling Plaintiff that the calls would not stop until the account was current. The calls did not stop.

22. Around June 2018, Plaintiff accepted a hardship application in an attempt to pay off the subject debt and keep her account current.

23. Unfortunately, Plaintiff was unable to keep up with payments and again fell behind on the subject debt.

---

[4] Upon information and belief, Defendant obtained Plaintiff's cellular telephone number through a method known as "skip-tracing," whereby debt collectors obtain phone numbers by conducting inquiries upon consumer credit reports or other public record searches.

24. Around August 2018, Plaintiff answered a call from Comenity. During this call Plaintiff informed Comenity's representative that the calls were harassing to her and asked to be removed from the list. Comenity's representative informed her that the calls would not stop.

25. As Comenity's representative stated, Comenity did not honor her request to stop calling her and continued to call.

26. On September 7, 2018, Plaintiff answered *another* call to her cellular phone from an unidentified number.[5] To Plaintiff's dismay, it turned out to be another call from Comenity. During this call Plaintiff spoke with a Comenity representative named Selena. Plaintiff requested that Comenity no longer call her using an unidentified number. Selena responded by telling Plaintiff she has no control over the phone calls, as Comenity uses an **Automated Dialer**. Plaintiff then ended the conversation by telling Selena not to call her at all.

27. Notwithstanding Plaintiff's multiple requests that Defendants cease placing calls to her cellular phone, Defendants placed or caused to be placed unrelenting harassing phone calls to Plaintiff's cellular phone between May 2018 and the present day.

28. Furthermore, Comenity left numerous pre-recorded voice messages on Plaintiff's cellular phone.

29. Moreover, Plaintiff also hears what sounds to be call center noise in the background of Defendants' collection calls.

30. Plaintiff's demands that Defendants' phone calls cease fell on deaf ears and Defendants continued their phone harassment campaign.

---

[5] At all times relevant, Plaintiff would receive collection calls from Defendants in which her caller ID would read: "UNIDENTIFIED." Upon information and belief, Defendants cloak the numbers they use to call consumers in order to increase their rate of answered calls, mask their identity, and to render their outgoing calls untraceable.

31. Defendants intentionally harassed and abused Plaintiff as Defendants were aware of Plaintiff's financial situation, yet they continued to try and call her.

32. Upon information and belief, Defendants placed their calls to Plaintiff's cellular telephone using an automated telephone dialing system, a system that is commonly used in the debt collection industry to collect defaulted debts.

33. The phone numbers that Defendants most often use to contact Plaintiff are (913) 312-5191, (913) 312-0983, (303) 323-8693, (913) 312-9496 and (913) 312-5192, but upon information and belief, they may have used other phone numbers to place calls to Plaintiff's cellular phone.

**DAMAGES**

34. Plaintiff has suffered and continues to suffer from emotional distress, mental anguish, and anxiety as a direct result of Defendants' unlawful collection practices.

35. Defendants' harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

36. Defendants' phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, physical harm, invasion of privacy, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, increased risk of personal injury due to the distraction caused by the phone calls, diminished value and utility of her telephone equipment and telephone subscription services, the wear and tear caused to her cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge her cellular telephone as a result of increased usage of her telephone services.

37. Concerned about the violations of her rights and invasion of her privacy, Plaintiff sought the assistance of counsel to cease Defendants' collection tactics, incurring costs and expenses.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

38. Plaintiff restates and realleges paragraphs 1 through 37 as though fully set forth herein.

39. Defendants repeatedly placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS") or prerecorded or artificial voice without Plaintiff's prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

40. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

41. Upon information and belief, based on the prerecorded messages and Defendants' lack of prompt human response during the phone calls in which Plaintiff answered, Defendants used an ATDS to place calls to Plaintiff's cellular telephone.

42. Upon information and belief, the ATDS employed by Defendants transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone or transfers the call to a live agent once a prerecorded message has finished playing.

43. Defendants violated the TCPA by placing numerous calls between May 2018 and the present day to Plaintiff's cellular phone, using an ATDS, without Plaintiff's prior consent.

44. Furthermore, Defendants violated the TCPA by placing numerous calls to Plaintiff's cellular phone after Plaintiff demanded that Defendants cease placing calls to her cellular phone and with knowledge that they did not have consent to contact Plaintiff on her cellular phone.

45. As pled above, Plaintiff was severely harmed by Defendants' collection calls to her cellular phone.

46. Upon information and belief, Defendants have no system in place to document and archive whether they have consent to contact consumers on their cellular phones.

47. Upon information and belief, Defendants knew that their collection techniques were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

48. Defendants, through their agents, vendors, representatives and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

49. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendants are liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendants' willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff ANNE J. FOWLER respectfully prays this Honorable Court for the following relief:
   a. Declare Defendant's calls to Plaintiff to be violations of the TCPA;
   b. Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and
   c. Awarding Plaintiff costs and reasonable attorney fees;
   d. Enjoining Defendant from further contacting Plaintiff; and
   e. Awarding any other relief as this Honorable Court deems just and appropriate.

### Count II – Violations of the Texas Debt Collection Act

50. Plaintiff restates and realleges paragraphs 1 through 49 as though fully set forth herein.

51. Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

52. The alleged subject debt is a "debt" "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

53. Defendants are a "debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6) and (7).

### a. Violations of TDCA § 391.302

54. The TDCA, pursuant to Tex. Fin. Code Ann. § 392.302(4), states that "a debt collector may not oppress, harass, or abuse a person by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number."

55. Defendants violated the TDCA when they continuously called Plaintiff's cellular phone after she informed them to stop contacting her. This repeated behavior of systematically calling Plaintiff's phone despite her demands was oppressive, harassing, and abusive. The repeated contacts were made with the hope that Plaintiff would make a payment. The frequency and volume of the calls shows that Defendants willfully ignored Plaintiff's pleas with the intent of annoying and harassing her.

56. Furthermore, Defendants relentlessly contacted Plaintiff multiple times per day on numerous occasions. Placing numerous calls on the same day in short succession constitutes conduct causing a telephone to ring repeatedly or continuously with the intent to annoy, abuse, and harass Plaintiff into making payment in violation of the TDCA.

57. Upon being told to stop contacting Plaintiff, Defendants had ample reason to be aware that they should cease their harassing campaign of collection phone calls. Nevertheless, Defendants consciously chose to continue placing phone calls to Plaintiff's cellular phone.

**WHEREFORE**, Plaintiff ANNE J. FOWLER respectfully requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1);

c. Award Plaintiff actual damages, pursuant to Tex. Fin. Code Ann. § 392.403(a)(2);

d. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

e. Award Plaintiff costs and reasonable attorney fees as provided under Tex. Fin. Code Ann. § 392.403(b) ; and

f. Award any other relief as the Honorable Court deems just and proper

**Plaintiff demands trial by jury.**


Dated: September 25, 2018                                   Respectfully Submitted,

/s/ Marwan R. Daher
Marwan R. Daher, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: (331) 307-7646
mdaher@sulaimanlaw.com